**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MITSUI SUMITOMO INSURANCE CO., LTD., as Subrogee of Nippon Sharyo Manufacturing, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>MEIKO AMERICA, INC., GENESIS GROUP, INC. d/b/a GENESIS LOGISTICS, INC., NEW ENGLAND EXPRESS, INC., UZST TRANSPORTATION, INC. and ODIL A. SHARIPOV,<br><br>        Defendants. | Case No. 15-3665 |

## **COMPLAINT**

Plaintiff Mitsui Sumitomo Insurance Co., Ltd., as subrogee of Nippon Sharyo Manufacturing, LLC, states its complaint against defendants Meiko America, Inc., Genesis Group, Inc. d/b/a Genesis Logistics, Inc., New England Express, Inc., Uzst Transportation, Inc. and Odil A. Sharipov as follows:

### **The Parties**

1.    Mitsui Sumitomo Insurance Co., Ltd. ("Mitsui") is a Japanese corporation. It is the insurer of the cargo that is the subject matter of this complaint and subrogated to the rights of the cargo's owner, Nippon Sharyo Manufacturing, LLC ("Nippon Sharyo"). Mitsui's third-party administrator in the United States is non-party Mitsui Sumitomo Marine Management (U.S.A.), Inc. ("Mitsui USA").

2. Nippon Sharyo's transportation agent for purposes of the shipment at issue in this complaint was Mr. Joji Nakamura, an employee of Meiko America Inc. ("Meiko"). Meiko is a California corporation that is registered to do and does business in Illinois.

3. Genesis Group, Inc. d/b/a Genesis Logistics, Inc. ("Genesis") is an Illinois corporation with its principal place of business in Bensenville, Illinois. Meiko engaged Genesis to transport the cargo at issue in this complaint. Genesis hired New England Express, Inc. to transport the cargo.

4. New England Express, Inc. ("New England") is an Illinois corporation with its principal place of business in Skokie, Illinois. New England hired Uzst Transportation, Inc. to transport the cargo at issue in this complaint.

5. Uzst Transportation, Inc. ("Uzst Transportation") is an Illinois corporation with its principal place of business in Bolingbrook, Illinois. Uzst Transportation is the interstate motor carrier that carried the cargo that is the subject matter of this complaint from Maryland to Illinois.

6. Odil A. Sharipov is, upon information and belief, a resident of Illinois. Sharipov was the driver of the truck that carried the cargo that is the subject matter of this complaint from Maryland to Illinois.

**Jurisdiction**

7. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1337 because the matter in controversy for each bill of lading in connection with the shipment exceeds $10,000, exclusive of interests and costs. This Court has supplemental jurisdiction over all state law claims asserted herein pursuant to 28 U.S.C. § 1367(a) because they are part of the

same case or controversy, within the meaning of Article III of the Constitution of the United States, as the Carmack Amendment claims.

8. This Court has personal jurisdiction over Meiko, Genesis, New England and Uzst pursuant to 735 ILCS 5/2-209(b) because they are all organized in Illinois, as well as 735 ILCS 5/2-209(a)(1) and (7) because they transact business within Illinois and made a contract substantially connected with Illinois. This Court has personal jurisdiction over Sharipov pursuant to 735 ILCS 5/2-209(b) because, on information and belief, he is a resident of Illinois, as well as 735 ILCS 5/2-209(a)(1) because he transacts business within Illinois.

## Venue

9. Venue is appropriate in this district pursuant to the Carmack Amendment, 49 U.S.C. § 14706(d), because the loss giving rise to this action occurred in the Northern District of Illinois.

## Background Facts

10. Nippon Sharyo and Knorr Brake Corporation ("Knorr") entered into two purchase contracts dated December 28, 2010 ("Contract 0000006") and October 20, 2011 ("Contract 0000208"), pursuant to which Knorr was to design, manufacture, inspect, deliver, qualify, test and warrant certain car equipment, special tools and spare parts for Nippon Sharyo's use on Metrolinx Diesel Multiple Units and METRA Gallery type Electrical Multiple Units.

11. Nippon Sharyo engaged Meiko to make all necessary shipping arrangements pursuant to Contracts 0000006 and 0000208. Pursuant to the parties' agreement, Meiko was to ensure the product was shipped in good order and condition from Knorr's facility to its destination. In exchange, Meiko was compensated pursuant to a written rate agreement.

12. When Knorr had product ready to ship to Nippon Sharyo pursuant to the contracts, it was to contact Meiko's employee and Nippon Sharyo's transportation agent, Nakamura, to arrange for shipment.

13. On October 24, 2013, 26 pallets or crates of product from Contract 0000208 and 7 pallets of product from Contract 0000006 became ready for shipment from Knorr's facility in Westminster, Maryland and Nakamura engaged Genesis to transport the product.

14. As of at least March 4, 2013 Meiko was a certificate holder of a certificate of liability insurance evidencing that Genesis had a contingent cargo policy of $500,000.

15. Genesis engaged New England to carry the cargo, issuing Bill of Lading CHI2046994, pertaining to the shipment for Contract 0000208, and Bill of Lading CHI2046993, pertaining to the shipment for Contract 0000006. Copies of these Bills of Lading are attached hereto as Exhibits A and B, respectively.

16. New England is an interstate motor carrier with an on-road performance BASIC score of 95% in October 2013, meaning that 95% of motor carriers in the same safety event group had better on-road performance than it at that time.

17. On information and belief, New England maintained only $100,000 of cargo insurance at the time it was engaged by Genesis.

18. On information and belief, Genesis did not inquire into New England's level of insurance nor inform New England of the value of the cargo being shipped.

19. On information and belief, Meiko believed Genesis would be acting as the motor carrier and had no knowledge that it intended to subcontract the carriage.

20. New England engaged Uzst Transportation to carry the cargo.

21. Uzst Transportation is an interstate motor carrier with an on-road performance BASIC score between 87-97% from April 2014, the earliest its BASIC score is available, through March 2015, meaning that 87-97% of motor carriers in the same safety event group had better on-road performance than it during that period.

22. On information and belief, since Meiko believed Genesis would be acting as the motor carrier, it had no knowledge of this subsequent subcontract from New England to Uzst.

23. On October 25, 2013, Sharipov, who was either an employee or independent contractor for Uzst Transportation, picked up the cargo from Knorr's facility in Westminister, Maryland for delivery to Genesis' facility in Bensenville, Illinois.

24. The cargo was in good condition when Sharipov picked it up and no exceptions were noted by any party.

25. Sharipov arrived in Bolingbrook, Illinois with the shipment at approximately 9:30 p.m. on October 25, 2013. There, he parked the vehicle containing the cargo on the shoulder of Old Chicago Drive, not returning until approximately 11:00 a.m. on October 27, 2013.

26. On information and belief, no monitoring or security system was utilized by Sharipov during this time.

27. When Sharipov returned to the parking location on October 27, 2013, the truck and its cargo were gone. Sharipov reported the vehicle as stolen to the Bolingbrook Police Department.

28. To date, neither the truck nor its cargo has been recovered.

29. Replacing the stolen cargo shipped under Bill of Lading CHI2046994 cost Nippon Sharyo $629,545 and replacing the stolen cargo shipped under Bill of Lading CHI2046993 cost Nippon Sharyo $153,474, for a total cost to Nippon Sharyo of $783,019.

30. Mitsui USA submitted claims to Meiko, Genesis and New England on May 28, 2014. All claims remain unresolved, though, on information and belief, both Genesis and New England's insurers denied their respective insured's claims.

## COUNT I
### Carmack Amendment, 49 U.S.C. § 14706
*Against Genesis, New England, Uszt Transportation and Sharipov*

31. Mitsui incorporates paragraphs 1 - 30 as though fully set forth herein.

32. Pursuant to the Carmack Amendment, 49 U.S.C. § 14706(a)(1), "[a] carrier [or freight forwarder] providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation . . . That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable [for the actual loss or injury to the property caused by, inter alia, the receiving or delivering carrier] to the person entitled to recover under the receipt or bill of lading."

33. Genesis, New England, Uszt Transportation and Sharipov were all carriers and/or freight forwarders providing transportation or service with respect to the shipments governed by Bills of Lading CHI2046994 and CHI2046993.

34. Since Genesis, New England, Uszt Transportation and Sharipov failed to deliver the property in the same good order and condition as when they received it, they are liable under the Carmack Amendment for the actual loss sustained by Nippon Sharyo.

6

WHEREFORE, Mitsui Sumitomo Insurance Co., Ltd. requests that this Court enter judgment in its favor and against Genesis Group, Inc. d/b/a Genesis Logistics, Inc., New England Express, Inc., Uzst Transportation, Inc. and Odil A. Sharipov, jointly and severally, for $783,019, pre-judgment interest, costs and any other relief this Court deems just.

### COUNT II
### Breach of Contract
### *Against Meiko*

35. Mitsui incorporates paragraphs 1 - 30 as though fully set forth herein.

36. Meiko agreed to handle all aspects of the transportation of the products Nippon Sharyo purchased pursuant to Contracts 0000006 and 0000208 in exchange for compensation pursuant to a written rate agreement.

37. Pursuant to the parties' agreement, Meiko was to ensure the products were shipped in good order and condition from Knorr's facility to its destination.

38. While Meiko has yet to send Nippon Sharyo an invoice for its services in relation to the products, Nippon Sharyo has been at all times ready, willing, and able to perform all conditions required pursuant to the written rate agreement.

39. Meiko breached its agreement to ensure the product was shipped in good order and condition when the cargo shipped pursuant to Bills of Lading CHI2046994 and CHI2046993 was stolen.

WHEREFORE, Mitsui Sumitomo Insurance Co., Ltd. requests that this Court enter judgment in its favor and against Meiko America, Inc. for $783,019, pre-judgment interest, costs and any other relief this Court deems just.

        Respectfully submitted,

        MITSUI SUMITOMO INSURANCE CO., LTD., as subrogee of Nippon Sharyo Manufacturing, LLC

By:    /s/ Paul J. Kozacky
        One of its attorneys

Paul J. Kozacky
John N. Rapp
Brian P. O'Connor
KOZACKY WEITZEL MCGRATH, P.C.
55 West Monroe Street, Suite 2400
Chicago, Illinois 60603
(312) 696-0900